## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| BPP, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:17-cv-00010-CEJ |
| v. | ) | |
| | ) | |
| BRASSELER U.S.A. DENTAL, LLC | ) | JURY TRIAL DEMANDED |
| and ENDODONTIC EDUCATION | ) | |
| SEMINARS, L.L.C. d/b/a REAL | ) | |
| WORLD ENDO, | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED CLASS ACTION JUNK-FAX COMPLAINT

Plaintiff BPP brings this junk-fax class action, on behalf of itself and all others similarly situated, against Defendants under the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, and the regulations promulgated thereunder (TCPA).

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff BPP is a fictitious name registered with the Missouri Secretary of State for a Missouri corporation with its principal place of business in St. Louis County, Missouri.

2.     Defendant Brasseler U.S.A. Dental, LLC (Brasseler), is a Georgia limited liability company in good standing with the Georgia Secretary of State and has its principal place of business in Savannah, Georgia.

3.     Brasseler is not registered with the Missouri Secretary of State to transact business in Missouri.

4.     Defendant Endodontic Education Seminars, L.L.C. d/b/a Real

1

World Endo (Real World Endo) is a Florida limited liability company in good standing with the Florida Secretary of State and has its principal place of business in Boston, Massachusetts.

5.    Real World Endo is not registered with the Missouri Secretary of State.

6.    This Court has personal jurisdiction over Defendants under 47 U.S.C. § 227(b)(3), because Defendants sent at least one illegal fax into Missouri, Defendants transact business within this state, Defendants have made contracts within this state, Defendants have committed tortious acts within this state, including conversion of fax recipients' paper, ink, and toner, or Defendants otherwise have sufficient minimum contacts with this state.

7.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under a federal statute.

8.    Venue is proper under 28 U.S.C. § 1391(b)(2).

**THE FAX**

9.    Between August 8 and September 15, 2016, Defendants used a telephone facsimile machine, computer, or other device to send to Plaintiff's telephone facsimile machine at (314) 991-4682 an unsolicited advertisement, a true copy of which is attached as **Exhibit 1** (Fax).

10.    Pleading in the alternative to the previous paragraph as to who sent the Fax, the Fax was sent *on behalf of* Defendants by a third-party.

11.    Plaintiff received the Fax through Plaintiff's facsimile machine.

2

12.     The Fax constitutes material advertising quality or commercial availability of any property, goods, or services, including a $149 continuing educational seminar in Columbia, Missouri, presented by Alex Fleury, DDS, MS, Director of Educational Resources for Real World Endodontics.

13.     A portion of page one of the Fax is copied below:

| WHEN: | Friday, September 16, 2016<br>8:00AM - 8:30AM - Registration<br>8:30AM - 3:00PM - Lecture, Lunch & Hands-On | TO REGISTER: | http://rwe-columbia-september-16-2016.whindo.com/ |
| WHERE: | Hampton Inn and Suites Columbia<br>1225 Fellows Place<br>Columbia, MO 65201<br>(573) 214-2222 | FOR QUESTIONS: | Casey Ives, (912) 921-7500, Ext. 5063 or coursemanager@realworldendo.com |
| | | CE CREDITS: | 6 CE Credits - **Price includes a 1 year Real World Endo Website Pro Membership for up to 17 additional FREE CE credits |
| | | EVENT COST: | $149 |

14.     Dr. Fleury's profile is featured on Brasseler's website, http://brasselerusadental.com/clinicians/alex-fleury-dds/ (last visited Nov. 3, 2016):



ALEX FLEURY, D.D.S., MS

Dr. Alex Fleury received his Masters of Science Degree in Oral Biology and Certificate in Endodontics from the University of Pennsylvania School of Dental Medicine. He received his DDS Degree in 1984 from the University of São Paulo. Dr. Fleury served as Director of Predoctoral Endodontics for 6 years at both Nova Southeastern University School of Dental Medicine in Florida and Baylor College of Dentistry.

He currently serves as Assistant Professor at Baylor College of Dentistry, working with Endodontic Residents. Of particular pride is being named the recipient of the "Edward E. Osetek Award" for best new Endodontic Educator of the year by the American Association of Endodontists. In addition, Dr. Fleury is honored to have been the recipient of the "Richard F. Weiss Achievement Award presented by the Louis I. Grossman Study Club (University of Pennsylvania). He also served on the Scientific Advisory Board of the Journal of Endodontics, and as well serves as the Director of Educational Resources for Real World Endodontics.

Dr. Fleury is currently in the full time private practice of Endodontics in Dallas, Texas.

EDUCATION:
University of Pennsylvania School of Dental Medicine, MS Oral Biology & Certificate of Endodontics
University of Sao Paulo, D.D.S., 1984

WEBSITE:
realworldendo.com

PRODUCT RECOMMENDATIONS:

ESX™ Endodontic Rotary Files
EndoSequence® BC Sealer
EndoSequence® Rotary Files
EndoSequence® Precision Endodontic System
EndoSequence® BC RRM-Fast Set Putty
EndoSequence® Root Repair Material Putty
EndoSequence® Root Repair Material
EndoSequence® BC Points
EndoSequence® 2
EndoDrive Plus
EndoPro 270
PAL (Precision Apex Locator)
Varios 350™ Fiber Optic
Varios 350™ Non-Fiber Optic

Go to BrasselerUSA.com | Subscribe to our newsletter | Help & Support | Government | Careers | Site Map | Privacy

3

15.    The Fax directs that for questions the recipient should contact Casey Ives at (912) 921-7500, extension 5063.

16.    Kathleen Cash Ives a/k/a Casey Ives is an Associate Product Manager at Brasseler and (912) 921-7500, extension 5063, is a Brasseler telephone number.

17.    Page two of the Fax states

CE support provided by    ◎ BRASSELER USA`

and acknowledges as follows that Defendants advertise by fax:

How did you hear about us?    ☐ Sales Rep    ☐ Mail    ☐ E-mail    ☐ Fax

18.    Defendants have sent other facsimile transmissions of material advertising the quality or commercial availability of property, goods, or services to Plaintiff and to at least 100 other persons as part of a plan to broadcast fax advertisements, of which the Fax is an example, or, alternatively, the Fax was sent on behalf of Defendants.

19.    Defendants approved, authorized and participated in the scheme to broadcast fax advertisements by (a) directing a list to be purchased or assembled, (b) directing and supervising employees or third parties to send the faxes, (c) creating and approving the fax form to be sent, and (d) determining the number and frequency of the facsimile transmissions.

20.     Defendants had a high degree of involvement in, actual notice of, or ratified the unlawful fax broadcasting activity and failed to take steps to prevent such facsimile transmissions.

21.     Defendants created, made, or ratified the sending of the Fax and other similar or identical facsimile advertisements, which Defendants sent to Plaintiff and to other members of the "Class" as defined below.

22.     The Fax, and the other similar or identical facsimile advertisements, sent by or on behalf of Defendants, is part of Defendants' work or operations to market Defendants' products, goods, or services.

23.     The Fax and the other facsimile advertisements constitute material furnished in connection with Defendants' work or operations.

24.     Under the TCPA and 47 C.F.R. § 64.1200(a)(3)(iii), the opt-out notice required for all facsimile advertisements must meet the following criteria:

(A)     The notice is clear and conspicuous and on the first page of the advertisement;

(B)     The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C)     The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section

(D)     The notice includes—

(1)     A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2)     If neither the required telephone number nor facsimile machine number is a toll-free number, a

separate cost-free mechanism including a Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

25. Senders of fax ads must include certain information in an opt-out notice on the fax, even if the recipient previously agreed to receive fax ads from such senders. *See* 47 C.F.R. § 64.1200(a)(4)(iv).

26. Senders of fax ads must fully comply with the opt-out notice requirements of 47 C.F.R. § 64.1200(a)(4)(iii).

27. The Fax and Defendants' similar facsimile advertisements lacked a notice stating that the recipient may make a request to the sender of the advertisement not to send future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting 47 C.F.R. § 64.1200(a)(4)(v)'s requirements is unlawful.

28. The transmissions of facsimile advertisements, including the Fax, to Plaintiff, lacked a notice that complied with 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)(iii).

29. On information and belief, Defendants faxed the same or other substantially similar facsimile advertisements to the members of the Class in Missouri and throughout the United States without first obtaining the recipients' prior express invitation or permission.

30.    Defendants violated the TCPA by transmitting the Fax to Plaintiff and to the Class members without obtaining their prior express invitation or permission and by not displaying the proper opt-out notice required by 47 C.F.R. § 64.1200(a)(4).

31.    Defendants knew or should have known that (a) facsimile advertisements, including the Fax, were advertisements, (b) Plaintiff and the other Class members had not given their prior invitation or permission to receive facsimile advertisements, (c) no established business relationship existed with Plaintiff and the other Class members, and (d) Defendants' facsimile advertisements did not display a proper opt-out notice.

32.    Defendants failed to determine correctly the legal restrictions on the use of facsimile transmissions and the application of those restrictions to facsimile advertisements, including the Fax, both to Plaintiff and the Class.

33.    Pleading in the alternative to the allegations that Defendants knowingly violated the TCPA, Plaintiff alleges that Defendants did not intend to send transmissions of facsimile advertisements, including the Fax, to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of facsimile advertisement was sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendants' understanding of the law or based on the representations of others on which Defendants reasonably relied.

34.    The transmissions of facsimile advertisements, including the Fax, to Plaintiff and the Class caused concrete and personalized injury, including

unwanted use and destruction of their property, e.g., toner or ink and paper, caused undesired wear on hardware, interfered with the recipients' exclusive use of their property, occupied their fax machines and fax lines for the period of time required for the electronic transmission of the data, and interfered with their business or personal communications and privacy interests.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this class action on behalf of the following class of persons, hereafter, the "Class":

> All persons in the United States who on or after four years prior to the filing of this action (1) were sent by or on behalf of Defendants a telephone facsimile message of material advertising the commercial availability or quality of any property, goods, or services, (2) with respect to whom Defendants cannot provide evidence of prior express invitation or permission for the sending of such faxes, and (3) either (a) with whom Defendants did not have an established business relationship, or (b) the fax identified in subpart (1) of this definition (i) did not display a clear and conspicuous opt-out notice on the first page stating that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under 47 C.F.R. § 64.1200(a)(4)(v) is unlawful, (ii) lacked a telephone number for sending the opt-out request, or (iii) lacked a facsimile number for sending the opt-out request.

> Excluded from the Class are Defendants, their employees, their agents, and members of the judiciary.

36.     This case is appropriate as a class action because:

a.      <u>Numerosity.</u>  On information and belief, based in part on review of the sophisticated Fax and online research, the Class includes at least 100 persons and is so numerous that joinder of all members is impracticable.

b. <u>Commonality.</u> Questions of fact or law common to the Class predominate over questions affecting only individual Class members, e.g.:

    i.    Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

    ii.    Whether the Fax, and other faxes transmitted by or on behalf of Defendants, contains material advertising the commercial availability of any property, goods or services;

    iii.    Whether the Fax, and other faxes transmitted by or on behalf of Defendants, contains material advertising the quality of any property, goods or services;

    iv.    The manner and method Defendants used to compile or obtain the list of fax numbers to which Defendants sent the Fax and other unsolicited faxed advertisements;

    v.    Whether Defendants faxed advertisements without first obtaining the recipients' prior express invitation or permission;

    vi.    Whether Defendants violated 47 U.S.C. § 227;

    vii.    Whether Defendants willingly or knowingly violated 47 U.S.C. § 227;

    viii.    Whether Defendants violated 47 C.F.R. § 64.1200;

    ix.    Whether the Fax, and the other fax advertisements sent by or on behalf of Defendants, displayed the proper opt-out notice required by 47 C.F.R. § 64.1200(a)(4);

    x.    Whether the Court should award statutory damages per TCPA violation per fax;

    xi.    Whether the Court should award treble damages per TCPA violation per fax; and

    xii.    Whether the Court should enjoin Defendants from sending TCPA-violating facsimile advertisements in the future.

c. <u>Typicality.</u> Plaintiff's claim is typical of the other Class members' claims, because, on information and belief, the Fax was substantially the same as the faxes sent by or on behalf of Defendants to the Class, and Plaintiff is making the same claim and seeking the same relief for itself and all Class members based on the same statute and regulation.

d.     Adequacy.   Plaintiff will fairly and adequately protect the interests of the other Class members.   Plaintiff's counsel is experienced in TCPA class actions, having litigated more than 55 such cases, and having been appointed class counsel in multiple cases, including a case before this Court.   Neither Plaintiff nor its counsel have interests adverse or in conflict with the Class members.

e.     Superiority.   A class action is the superior method for adjudicating this controversy fairly and efficiently.   The interest of each individual Class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

37.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1).

38.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

39.     The TCPA provides:

Private right of action.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

(A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)   An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)   Both such actions.

47 U.S.C. § 227(b)(3)(A)-(C).

40.   The TCPA also provides that the Court, in its discretion, may treble the statutory damages if a defendant "willfully or knowingly" violated Section 227(b) or the regulations prescribed thereunder.

41.   "A facsimile broadcaster will be liable for violations of [Section 64.1200(a)(4)]. . . , including the inclusion of opt-out notices on unsolicited advertisements, if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions."  47 C.F.R. § 64.1200(a)(4)(vii).

42.   Because the TCPA is a strict liability statute; Defendants are liable to Plaintiff and the Class even if Defendants only acted negligently.

43.   Defendants' actions caused damage to Plaintiff and the Class, as

a.   receiving Defendants' faxed advertisements caused the recipients to lose paper and toner consumed in printing Defendants' faxes;

b.   Defendants' actions interfered with the recipients' use of the recipients' fax machines and telephone lines;

c.   Defendants' faxes cost the recipients time, which was wasted time receiving, reviewing, and routing the unlawful faxes, and such time otherwise would have been spent on  business activities; and

11

      d.      Defendants' faxes unlawfully interrupted the recipients' privacy interests in being left alone.

44.      Defendants intended to cause damage to Plaintiff and the Class, to violate their privacy, to interfere with the recipients' fax machines, or to consume the recipients' valuable time with Defendants' advertisements; therefore, treble damages are warranted under 47 U.S.C. § 227(b)(3).

45.      Defendants knew or should have known that (a) Plaintiff and the other Class members had not given express invitation or permission for Defendant or anyone else to fax advertisements about Defendants' property, goods, or services, (b) Defendants did not have an established business relationship with Plaintiff and the other Class members, (c) the Fax and the other facsimile advertisements were advertisements, and (d) the Fax and the other facsimile advertisements did not display the proper opt-out notice.

46.      Defendants violated the TCPA by transmitting the Fax to Plaintiff and substantially similar facsimile advertisements to the other Class members without obtaining their prior express invitation or permission and by not displaying the proper opt-out notice required by 47 C.F.R. § 64.1200(a)(4)(iii).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

      a.      certify this action as a class action and appoint Plaintiff as Class representative;

      b.      appoint the undersigned counsel as Class counsel;

      c.      award damages of $500 per TCPA violation per facsimile pursuant to 47 U.S.C. § 227(a)(3)(B);

d.  award treble damages up to $1,500 per TCPA violation per facsimile pursuant to 47 U.S.C. § 227(a)(3);

e.  enjoin Defendants and their contractors, agents, and employees from continuing to send TCPA-violating facsimiles pursuant to 47 U.S.C. § 227(a)(3)(A);

f.  award class counsel reasonable attorneys' fees and all expenses of this action and require Defendants to pay the costs and expenses of class notice and claim administration;

g.  award Plaintiff an incentive award based upon its time expended on behalf of the Class and other relevant factors;

h.  award Plaintiff prejudgment interest and costs; and

i.  grant Plaintiff all other relief deemed just and proper.

SCHULTZ & ASSOCIATES LLP


By:  /s/ Ronald J. Eisenberg
Ronald J. Eisenberg, #48674MO
Robert Schultz, #35329MO
640 Cepi Drive, Suite A
Chesterfield, MO 63005
636-537-4645
Fax: 636-537-2599
reisenberg@sl-lawyers.com
rschultz@sl-lawyers.com

*Attorneys for Plaintiff*

Law Offices of Philip M. Horwitz, L.L.C.

By:  /s/ Philip M. Horwitz
Philip M. Horwitz, #38493
640 Cepi Drive, Suite A
Chesterfield, MO 63005-1221
(636) 536-9644
Fax: (636) 778-1252
pmhlth@aol.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on February 7, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all registered counsel of record.

/s/ Ronald J. Eisenberg